IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BENJAMIN ROBERT BROWN,

    *Petitioner*,

v.

UNITED STATES OF AMERICA,

    *Respondent*.

Criminal Action No. ELH-14-0532

Related Civil No.: ELH-16-4075

**MEMORANDUM OPINION**

This Memorandum Opinion resolves a Motion To Vacate, Set Aside, or Correct Sentence filed by Benjamin Brown, Petitioner, pursuant to 28 U.S.C. § 2255. ECF 191 (the "Petition"). The government filed a response in opposition (ECF 201), along with exhibits. Brown has filed a reply. ECF 204. At its core, Petitioner's various complaints may be distilled to the overarching contention that his lawyer was ineffective because his codefendants received more lenient sentences.

Under 28 U.S.C. § 2255(b), a hearing is required "[u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief . . . ." This is such a case; no hearing is necessary. For the reasons that follow, I shall deny the Petition.

**I. Factual and Procedural Background**

On November 12, 2014, Petitioner Benjamin Brown and five others were indicted on charges of conspiracy to distribute and possess with intent to distribute the following controlled substances: cocaine base (Count One); heroin (Count Two); and cocaine (Count Three). ECF 1. Pursuant to a Plea Agreement (ECF 125), Brown entered a plea of guilty on August 18, 2015 (ECF 124) to Count Three of the Indictment, charging conspiracy to distribute and possess with

intent to distribute five hundred grams or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 846.

In the Plea Agreement, the parties agreed that Mr. Brown qualified as a Career Offender. *See* ECF 125, ¶ 6(a). Notably, the plea was entered pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. *Id.* ¶ 8. Under the terms of the C plea, the parties agreed to a sentence of imprisonment ranging between 84 months and 120 months. *Id.*

Sentencing was held on December 1, 2015. ECF 157. At sentencing, the Court found that Brown is a Career Offender with a final offense level of 31 and a criminal history category of VI, and an advisory sentencing guidelines range of 188 to 235 months of imprisonment. ECF 196 (Sentencing Transcript); ECF 201-2 (Sentencing Transcript); *see also* ECF 145 (Presentence Report); ECF 160 (Statement of Reasons). He faced a mandatory minimum sentence of five years (60 months). The Court imposed a sentence of 100 months' imprisonment, which was within the C plea range of 84 to 120 months. Judgment was entered on the same date. ECF 159.

Brown did not note an appeal to the United States Court of Appeals for the Fourth Circuit. Brown's Petition was docketed in this Court on December 22, 2016. ECF 191. According to the Petition, Brown signed and dated the Petition on December 14, 2016. *Id.* at 16.

Additional facts are included in the Discussion.

## II. Discussion

### A. Hearing

Under 28 U.S.C. § 2255(b), the post-conviction court must hold a hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief. . . ." *See, e.g.*, *United States v. Lemaster*, 403 F.3d 216, 220-23 (4th Cir. 2005); *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). Courts have determined that a hearing is not necessary

where "the motion . . . fail[s] to allege sufficient facts or circumstances upon which the elements of constitutionally deficient performance might properly be found [or] where the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion." *United States v. Taylor*, 139 F.3d 924, 933 (D.C. Cir. 1998) (internal quotation marks and citation omitted); *accord United States v. McGill*, 11 F.3d 223, 225–26 (1st Cir. 1993). On the other hand, a hearing is generally "required when a movant presents a colorable Sixth Amendment claim showing disputed material facts and a credibility determination is necessary to resolve this issue." *United States v. Robertson*, 219 Fed. App'x 286, 286 (4th Cir. 2007); *see also United States v. Ray*, 547 Fed. App'x 343, 345 (4th Cir. 2013).

I am mindful that a self-represented litigant is generally "held to a 'less stringent standard[ ]' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Commonwealth of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (per curiam) (same). Nevertheless, I am satisfied that no hearing is necessary to resolve Brown's claims.

### B. Timeliness of Petition

Under the provisions of 28 U.S.C. § 2255(f), a one-year limitation period applies to petitions under § 2255, which runs from the latest of:

    (1)  the date on which the judgment of conviction becomes final;

    (2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of

>    the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Timeliness under § 2255(f) is assessed on a "claim-by-claim basis." *Capozzi v. United States,* 768 F.3d 32, 33 (1st Cir. 2014) (per curiam) (collecting cases from the Third, Sixth, Ninth, Tenth, and Eleventh Circuits), *cert denied*, ___ U.S. ___, 135 S. Ct. 1476 (2015); *see Zach v. Tucker*, 704 F.3d 917, 924-25 (11th Cir. 2013) (en banc) (explaining that a petitioner may not use a single, timely claim to revive time-barred claims), *cert denied*, ___ U.S. ___, 134 S. Ct. 156 (2013); *Hannigan v. United States*, 131 F. Supp. 3d 480 (E.D.N.C. 2015), *appeal dismissed*, 638 Fed. App'x 234 (4th Cir. 2016) (per curiam), *cert. denied*, ___ U.S. ___, 137 S. Ct. 404 (2016); *see also Mayle v. Felix,* 545 U.S. 644, 662 (2005); *Pace v. DiGuglielmo,* 544 U.S. 408, 416 n. 6 (2005).

In this case, sentencing was held on December 1, 2016. Judgment was entered on the same date. ECF 159. Because the judgment was entered on December 1, 2015 (ECF 159), the deadline to file a Notice of Appeal expired fourteen days later. Fed. R. App. P. 4(b)(1)(A). Defendant did not note an appeal, however.

The government argues that Brown's conviction became final on the date the Judgment was entered, *i.e.*, December 1, 2015, because Brown declined to pursue direct appellate review. It cites *United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001), in which the Court determined that the conviction at issue in that case became final on the date the Judgment was entered, because the defendant did not pursue further appellate review. *Id.* at 142. Therefore, the

government maintains that limitations in this case expired on December 1, 2016, and thus the Petition was untimely filed.

However, other cases have recognized that the Judgment becomes final upon expiration of the time for filing a direct appeal. *Cf. Clay v. United States*, 537 U.S. 522, 525 (2003) (addressing petition for certiorari); *United States v. Diallo*, 581 Fed. App'x 226, 227 (4th Cir. 2014) (per curiam) (stating that the federal conviction became final upon the expiration of the 14-day period for filing a direct appeal); *Faulkner v. United States*, 2016 WL 816 785, at *1 (E.D.N.C. Feb. 29, 2016).

In my view, the conviction became final upon expiration of the time for filing a notice of appeal, and the limitations period set forth at 28 U.S.C. § 2255(f)(1) began to run on that date. *See*, *e.g.*, *United States v. Wilson*, 256 F.3d 217, 221 (4th Cir. 2001). Judgment was entered on December 1, 2015. A notice of appeal was due by December 15, 2015. Brown claims, under oath, that he placed his Petition in the prison mail system on December 14, 2016. ECF 191 at 16. Accordingly, I am satisfied that the Petition was timely filed. Therefore, I turn to the merits.

### C. The Claims

Pursuant to 28 U.S.C. § 2255(a), a prisoner in federal custody may "move the court which imposed the sentence to vacate, set aside or correct the sentence," but only on certain grounds: "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . ." *See also United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015).

Collateral attack is not a substitute for direct appeal; failure to raise certain issues on direct appeal may render them procedurally defaulted on post-conviction review. *United States*

5

*v. Frady*, 456 U.S. 152, 165 (1982); *accord Bousely v. United States*, 523 U.S. 614, 630 (1998). As a general rule, a petitioner who fails to raise a claim on direct appeal is barred from raising the claim on collateral review. *Sanchez–Llamas v. Oregon*, 548 U.S. 331, 350–51 (2006). However, this bar generally does not apply to claims pertaining to ineffective assistance of counsel. *See, e.g.*, *Massaro v. United States*, 538 U.S. 500, 503–04 (2003).

Brown contends that he received ineffective assistance of counsel because, of the six defendants in this drug conspiracy case, he was "the most minimal participant," yet his five codefendants received "far more favorable pleas . . . ." ECF 191 at 5. In particular, Brown complains that his defense attorney was constitutionally deficient for failing to obtain "a negotiated plea in the 60 month c plea range that was obtained by the other defendants who received reasonable lawyering . . . ." *Id.* Further, Brown asserts, *id.* at 6: "The most culpable defendants received better plea deals with far more favorable results satisfying both the performance and the prejudice prong [of *Strickland v. Washington*, 466 U.S. 668 (1984)]. *Id.*

In addition, Petitioner complains that his attorney failed to protect Petitioner's "right to appeal" and "rendered constitutionally deficient performance in the overall sentencing process . . . ." ECF 191 at 6, 7. Among other things, Brown complains that his lawyer failed to object to "erroneous filings" in the Presentence Report (*id.* at 8); failed to argue "consideration of an accurate advisory guideline range (*id.*); failed to file a motion requesting a downward variance (*id.*); and "failed to argue competently for appropriate application of the [18 U.S.C. §] 3553 factors[.]" *Id.*

In Petitioner's reply (ECF 204), he reiterates his complaint regarding "a serious disparity in sentencing" among the various defendants. *Id.* at 2.

### D. Standard for Effective Assistance of Counsel

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, ___ U.S. ___, 137 S. Ct. 759, 775 (2017). Ineffective assistance of counsel is a well recognized basis for relief under § 2255. *See generally Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

To mount a successful challenge under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Id.* at 687; *see Buck*, 137 S. Ct. at 775; *Chaidez v. United States*, ___ U.S. ___, 133 S. Ct. 1103, 1107–8 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52 (1985); *Powell*, 850 F.3d at 149; *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see, e.g., United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013).

The first prong is known as the "performance prong," which relates to professional competence. The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688; *see Powell*, 850 F.3d at 149. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (quoting *Strickland*, 466 U.S. at 690). The burden is on the petitioner to

establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687).

As the Supreme Court recently reiterated, the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775; *see also Powell*, 850 F.3d at 149. "The lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 137 S.Ct. at 775 (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)).

To satisfy the high bar, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland,* 446 U.S. at 689); *see Harrington*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015). Indeed, "the *Strickland* standard must be applied with scrupulous care," *Harrington*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one." *Id.*

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776;

*Lafler*, 566 U.S. at 163. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687.

The *Padilla* Court said, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task." This is because a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court...to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

Because Petitioner complains about his plea bargain, as compared to those of his codefendants, the principles with regard to a lawyer's duty in regard to plea bargaining are also relevant. Complaints of ineffective assistance of counsel in regard to plea bargaining are governed by the two-part test set forth in *Strickland*, 466 U.S. 668. That standard is outlined above.

"The negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla*, 559 U.S. at 373; *see also Frye* 566 U.S. at 143-44; *Hill*, 474 U.S. at 57. Indeed, the Supreme Court recognized in *Frye*, 566 U.S. at 143, that "plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process. . . ." The *Frye*

9

Court stated, *id.* at 144, that "criminal defendants require effective counsel during plea negotiations. 'Anything less . . . might deny a defendant effective representation by counsel at the only stage when legal aid and advice would help him.'" (Citation and some internal quotations omitted). Similarly, in *Lafler*, 566 U.S. at 170, the Court observed that our criminal justice system "is for the most part a system of pleas, not a system of trials."

In *Lafler*, the petitioner claimed that ineffective assistance of counsel led him to reject a plea offer. *Id.* at 163. In that case, the defense attorney disclosed the plea offer to the defendant. But, it was undisputed that defense counsel's advice to reject the plea offer fell below the standard for competent assistance of counsel. *Id.* at 160. In that circumstance, said the Court, "a defendant must show the outcome of the plea process would have been different with competent advice." *Id.* Put another way, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability . . . that the defendant would have accepted the plea and . . . that the conviction or sentence, or both, under the offer's terms would have been less severe" than what was imposed. *Id.* at 164.

The Court rejected the contention that a fair trial remedies any such errors, stating: "Far from curing the error, the trial caused the injury from the error." *Id.* at 166. This is because the defendant received a sentence substantially more severe than what he likely would have received had he pleaded guilty. *Id.*

Nevertheless, a defendant has "no right to be offered a plea . . ." *Frye*, 566 U.S. at 148. Rather, if one is offered, the defendant "has the right to 'effective assistance of counsel in considering whether to accept it." *Lafler*, 566 U.S. at 168. Clearly, "it is the responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a plea agreement." *Libretti v. United States*, 516 U.S. 29, 50 (1995). And, "prejudice can be shown if loss of the

plea opportunity led to a trial resulting in a conviction or more serious charges or the imposition of a more severe sentence." *Lafler*, 566 U.S. at 168.

In the context of a defendant who pleads guilty, a petitioner can make a claim for ineffective assistance of counsel if he can "show that there is a reasonable probability" that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. Specifically, "a defendant must show that but for the ineffective assistance of counsel there is a reasonable probability that the plea offer would have been presented to the court … , that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were in fact imposed." *Id*. at 163.

### E. The Guilty Plea

As noted, the Court conducted the Rule 11 guilty plea proceeding on August 18, 2015. ECF 195; *see also* ECF 201-1. At the outset of the guilty plea proceeding, the defendant was placed under oath. *Id.* at 2. The Court also advised Mr. Brown of the significance of the oath that he took. *Id.* at 4. *See United States v. Lemaster*, 403 F.3d 216, 222 (4th Cir. 2005) (stating that, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements").

Upon inquiry by the Court, Mr. Brown advised the Court that he had no complaints whatsoever about the legal services provided to him by his attorney. *Id.* at 5. To the contrary, he was fully satisfied with his lawyer's representation of him. *Id.* at 5-6.

Moreover, the Court reviewed with Mr. Brown that the Plea Agreement reflected that parties had reached an agreement as to as the appropriate disposition of the case, *i.e.*, a sentence of imprisonment ranging between 84 months and 120 months. *Id.* at 15. Mr. Brown expressly indicated that this was his agreement. *Id.* And, the Court made clear that, under the terms of the C plea, the Court could sentence the defendant to any term of imprisonment ranging between 84 months and 120 months. *Id.* at 17. Mr. Brown indicated that he understood. *Id.* Further, the Court explained to Mr. Brown that his guilty plea would result in a violation of the terms of his supervised release in an earlier, unrelated federal criminal matter, which was then assigned to Judge Marvin Garbis of this Court. *Id.* at 17-18.

At the sentencing on December 1, 2015, the Court determined that Mr. Brown qualified as a Career Offender. *See* ECF 196 at 5-7; ECF 201-2 at 5-7; *see also* ECF 146, ¶¶ 22, 28, 29. That determination was consistent with the Plea Agreement, in which the parties stipulated that the defendant qualified as a Career Offender. *See* ECF 125, ¶ 6(a) at 3-4. After deductions for acceptance of responsibility, the Court found that Mr. Brown's final offense level was a 31, with a criminal history category of VI, giving him an advisory sentencing guidelines range of 188 to 235 months' imprisonment. ECF 196 at12; ECF 201-2 at 12.

The prosecutor addressed 18 U.S.C. § 3553(a) and recommended a sentence at the high end of the C plea range of 84 to 120 months. *Id.* at 14. Notably, the top end of the C plea range was well below the advisory sentencing guidelines range of 188 to 235 months. Among other reasons for his position, the prosecutor pointed out that Brown committed the underlying offense while on federal supervised release for distribution of a kilogram or more of heroin (*id.* at 17), for which he had received a substantial sentence of 128 months' imprisonment. *Id.* at 16-17. Thus, the government expressed concern about Brown's recidivism. *Id.* at 17. In addition, the

prosecutor noted that a firearm was recovered from the bedroom of Brown's children. *Id.* And, Brown had a history of violation of probation in State court. *Id.* at 16.

At the time of the sentencing proceeding, four of Petitioner's codefendants had already been sentenced, and all received sentences of 60 months. The Court noted differences among the codefendants. *Id.* at 19. For example, one codefendant had an offense level of 25 and a criminal history category of IV, which was significantly below the offense level and criminal history category applicable to the defendant. *Id.*[1] Nevertheless, I questioned the government about sentencing discrepancies. The government responded, *inter alia*, explaining that "none of the other defendants before Your Honor were on supervised release for a federal narcotics conviction." ECF 201-2 at 20.

Defense counsel vigorously addressed the claim of sentencing disparities. *See* ECF 201-2 at 8, 25-29. But, defense counsel acknowledged that Brown "was on supervised release for a serious drug offense when this occurred." ECF 201-2 at 30-31. He added: "He recognizes that." *Id.* at 31.

In imposing sentence, the Court reviewed many factors about Mr. Brown's life. *Id.* at 42-44. The Court observed, *inter alia*, that only Mr. Brown had a prior federal drug conviction and that he committed the underlying offense while on federal supervised release. ECF 201-2 at 41-42. The Court was "trouble[d]" because Mr. Brown's prior sentence of 128 months, in his earlier federal drug case, "didn't work." *Id.* at 45. The Court said, in part, *id.* at 42:

> [Y]ou served a very long sentence. Out of 128 months, it looks to me like you were incarcerated for about nine years, if the math is right, give or take. And yet, even while on supervised release, you reoffended. And whatever drove you to do it, it's hard for me to sugarcoat the fact that, after that serious an offense in [the] federal system, it wasn't enough to prevent you from reoffending.

---

[1] A review of the cases as to the other codefendants reflects various distinctions.

That weighs very heavily on my mind.

The Court also said, ECF 201-2 at 44: "I guess, at the end of the day, the fact that this [offense] happened while you were on supervised release does raise some serious concerns to the Court. And I don't feel, for the reasons I've just said, that a sentence at the very bottom of the range that's before the Court would be appropriate."

The Court's sentence of 100 months' imprisonment was within the C plea range of 84 to 120 months, and it was significantly below the advisory guideline range of imprisonment. The Court noted, *id.*: "I think, frankly, the sentence [of 100 months' incarceration] is really generous." The Court also observed, *id.* at 46: "I easily could have justified a sentence . . . at the top of the (C) plea range . . . which would have been well below the guidelines." *Id.* at 46. And, said the Court, "the fact that I am sentencing this defendant to a sentence less than Judge Garbis gave him previously is in itself an indication of the leniency of the Court, in my opinion." *Id.*

At the conclusion of sentencing, the Court turned to the disposition of the violation of supervised release in connection with the prior drug case that had previously been assigned to Judge Garbis. *See* Case 03-004. In regard to the violation of supervised release, I agreed to dismiss the violation and to close the case. ECF 201-2 at 50. And, I said, *id.* at 51: "I think that the record should reflect, in my view, that's another benefit to the defendant, that it's getting closed out. Because I could have imposed consecutive time . . . ." The Court continued, *id.*: "So I just want the defendant to understand that. He did face a possibility of consecutive additional prison time, and I'm going, instead, to close out the case for the violation of supervised release."

A review of the sentencing transcript reflects that defense counsel ardently argued for his client. But, even the most effective advocate cannot rewrite a defendant's criminal history. To

the extent Brown believes his Plea Agreement was unfavorable, it was not due to any constitutional inadequacy on the part of his lawyer.

Petitioner also claims that his lawyer was ineffective for failing to preserve his right to appeal. ECF 21 at 6. At the defendant's plea colloquy, the Court reviewed the terms of the Plea Agreement with respect to the right to appeal. *See* ECF 201-1 at 18-19. The Court noted the defendant reserved the right to appeal any sentence greater than 120 months. *Id.* at 19. In addition, the Court informed the defendant of his rights under Fed. R. Crim. P. 35(a). The defendant's sentence was below 120 months. Therefore, apart from Petitioner's claim of ineffective assistance, it is difficult to know what appeal he wanted his lawyer to file for him.

Brown also claims that his lawyer failed to argue for appropriate application of the factors under 18 U.S.C. § 3553. His claim is completely at odds with the record.

### III. Conclusion

Petitioner's claims of ineffective assistance of counsel are wholly devoid of merit. At the end of the day, Brown's claims are reduced to his view that his lawyer must have been deficient because his codefendants received lesser prison sentences. At the government aptly notes, "This does not amount to ineffective assistance." ECF 201 at 10.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant. A COA is a "jurisdictional prerequisite" to an appeal from the court's disposition. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, ____ U.S. ____, 137 S. Ct. 759, 773 (2017).

Where, as here, the court denies petitioner's Motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). In my view, reasonable jurists would not find Petitioner's claim debatable. Therefore, a certificate of appealability is DENIED.[2]

A separate Order follows.

Dated: November 1, 2017 　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　Ellen L. Hollander
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[2] The district court's denial of a COA does not preclude a petitioner from seeking a COA from the appellate court.